THE NO. 32.

THE TRANSFER NO. 18.

(Circuit Court of Appeals, Second Circuit. May 25, 1909.)

No. 268.

COLLISION (§ 102*)—TUGS WITH TOWS—MUTUAL FAULT.

One of two car floats, on either side of a transfer tug coming out of the Greenville channel in upper New York Bay, about half way between Bedloe's Island and Robbins' Reef, at night, came into collision with a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

coal barge, which formed one of a tow of 34 vessels which was being taken down past the mouth of the channel at a distance of 400 or 500 feet; the entire tow being about 1,300 feet long. *Held*, that both tugs were in fault; the one passing down for proceeding with so long a tow so near the mouth of the channel without taking precautions to observe and warn any vessels coming out, and the transfer tug in failing to see and avoid the barge, there being no evidence that the latter did not carry proper lights.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 102.*]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, holding the steam tug No. 32 solely responsible for the damages resulting from a collision between the coal barge West Farms, in tow of No. 32, and a car float, which it is alleged was in tow of Transfer No. 18.

Robinson, Biddle & Benedict (W. S. Montgomery and Roderick Terry, Jr., of counsel), for appellant.

Wilcox & Green (Herbert Green, of counsel), for appellee Williams.

James T. Kilbreth, for the Transfer No. 18.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The collision happened in the upper bay of New York, off the mouth of the dredged channel to Greenville, a Pennsylvania Railroad terminal on the west shore of the bay, the channel lying about half way between Bedloe's Island and Robbins' Reef. No. 32 was proceeding down the bay with 34 boats in tow, the flotilla extending about 1,300 feet, and passed the mouth of Greenville channel about 400 or 500 feet out. As her tow was passing the mouth of the channel, the West Farms, which was the starboard boat in the last tier, was run into by one of two car floats which came out of the channel and were heading towards Brooklyn. The District Judge held No. 32 in fault for failing to keep a proper lookout, and for proceeding with so long a tow so closely to an outlet into the bay, without taking special precautions to observe whether anything was coming out.

The testimony of the master of No. 32 as it is found in the record is contradictory and very unsatisfactory. Apparently the District Judge who heard him testify did not credit his account of what took place, and we see no reason to dissent from the conclusion that he was in fault. There is nothing in the evidence to indicate that there were no lights on the tow, or that it could not be seen and easily avoided by the tug which brought the car floats out of the channel. In the absence of any testimony explaining and excusing her navigation, she should be held in fault. The defense presents solely a question of identity, it being insisted that neither of the car floats which Transfer 18 had in tow that night collided with anything. If the record contained only the testimony of the master and deckhand of No. 32 as to their observations of the colliding flotilla, identification would not be established. But there is other evidence which we find conclusive.

No one challenges the truthfulness of the story told by the master

of the West Farms that she was run into that night by one of two car floats in tow of a tug somewhere between the Statue of Liberty and Robbins' Reef; nor is it disputed that she was damaged by such collision. Apparently the blow was not a very severe one. The cost of repairs was only $250. Since the heavy loaded car floats projected far in advance of the tug, it is quite conceivable that the impact of the blow might not be felt by the witnesses called from the tug, who testify that they did not hit anything. There has been much inconsistency in the averments and assertions made on behalf of No. 32 as to the hour when the collision took place; but there is record evidence which definitely establishes it. Her tow was made up at the scow Amboy at Liberty Island. The regulations of the Pennsylvania Railroad Company require a blank "report of towing by tugboat" to be filled up, which gives the name or number of the tug, enumerates the units of the tow, and sets forth various other particulars in reference to them. Such report of towing by tugboat 32 from 2:35 a. m. June 6, 1907, to 10:40 a. m. of the same day, is produced from the records of the company. The first hour therein given, "2:35 a. m.," was taken by the deckhand, as he testified, from the clock in the pilot house at the time the lines were cast off from the scow, and he entered it in the report. This establishes the time the tug and tow started, and, although the tow was a large one, they could easily have reached the mouth of Greenville Channel by a little after 3.

A record of the movements of boats was also kept at the Pennsylvania terminal docks, head of Greenville Channel, and the entries in that record were testified to by the man who made them and put in proof. From this record it appears that the only floats and tugs which left between midnight and 6 a. m. were as follows: Transfer No. 16 left at 12:50 a. m., with car floats Nos. 12, 50, and 53 in tow. Transfer No. 18 (N. Y., N. H. & H.) left at 3:10 a. m., with car floats 46 and 42 in tow. The tug Gladiator left at 4:03 a. m., with a Long Island Railroad float No. 15 in tow. The Maryland left at 5:30 a. m. There is nothing to impugn the accuracy of this record, and in view of its disclosures we cannot escape the conviction that the tug, with two car floats, which the West Farms encountered when about halfway between Bedloe's Island and Robbins' Reef, off the mouth of Greenville Channel, was Transfer No. 18; and, having no sufficient explanation of her failure to observe and avoid the barge, we think she should be held in fault.

The decree of the District Court is reversed, without costs, and cause remanded, with instructions to decree against both vessels.